UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                        :    Chapter 11
                                              :
TAPMASTERS CHELSEA, LLC, *et al.,*            :    Case No. 16-12539 (MEW)
                                              :
                    Debtors.                  :    (Jointly Administered)
------------------------------------------------------------x
TAPMASTERS HOBOKEN, LLC,                      :
                                              :
                    Plaintiff,                :
                                              :    Adv. Proc. No. 20-01085 (MEW)
           -against-                          :
                                              :
BLACKROCK MILLWORK                            :
COMPANY, LLC                                  :
                                              :
                    Defendant.                :
------------------------------------------------------------x

## DECISION REGARDING CLAIM FOR
## PREJUDGMENT INTEREST ON DEFAULT JUDGMENT

A P P E A R A N C E S :

OFFIT KURMAN, P.A.
*Attorneys for Tapmasters Hoboken, LLC*
By:   Michael T. Conway

BLACKROCK MILLWORK COMPANY, LLC
*Pro se*

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

This matter concerns the proper calculation of prejudgment interest to which the Plaintiff Tapmasters Hoboken, LLC ("**Tapmasters**") is entitled in connection with a default judgment in its favor. In this action, Tapmasters asserted causes of action for turnover pursuant to sections 541 and 542 of the Bankruptcy Code and unjust enrichment against Defendant Blackrock Millwork Company, LLC ("**Blackrock**").

1

The complaint, which was filed on May 11, 2020, makes the following allegations:

- Tapmasters is a New Jersey limited liability company with a principal place of business in New Jersey and Blackrock is a limited liability company with a principal place of business in Florida. Compl. ¶¶ 3, 4 [ECF No. 1].

- On March 17, 2016, Blackrock prepared a proposal to perform construction work at Tapmasters' premises located in Hoboken, New Jersey. *Id.* ¶ 1.

- Tapmasters "agreed to use" Blackrock for the construction work and "made a deposit" with Blackrock in the amount of $29,000. *Id.*

- Blackrock never performed the construction work and despite Tapmasters' repeated demands, never returned the deposit. *Id.* ¶¶ 2, 16.

Notably, the complaint did not specify any of the dates upon which Tapmasters demanded that Blackrock refund the deposit. Two causes of action were asserted: one for a "turnover" of property under section 542 of the Bankruptcy Code, and one for "unjust enrichment." The complaint sought, among other things, actual damages in the amount of "not less than $29,000" and prejudgment interest at the Florida statutory rate of 6.77%. *Id.* at 6.

Tapmasters served Blackrock a copy of the summons and complaint pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3) (s*ee* Ex. 1 to Decl. Requesting Clerk's Cert. of Default [ECF No. 4]), but Blackrock filed no responsive pleading or motion and failed to enter an appearance. The Clerk's office entered a default against Blackrock [ECF No. 5], and Tapmasters moved by notice of presentment for entry of a default judgment. [ECF No. 8]. I entered an order on August 26, 2020 that granted Tapmasters' unopposed motion pending an inquest as to damages. [ECF No. 9].

I held a telephonic hearing for the inquest as to damages on September 17, 2020, which was attended by Jesse Singh (Tapmasters' current manager), Willie Mingo (Tapmasters' former manager) and Tapmasters' attorney. At the hearing, I entered into evidence the declarations of Mr. Singh and Mr. Mingo, along with the Blackrock proposal, which indicated that Blackrock has offices in New Jersey as well as in Florida. [ECF No. 12.] I also entered into evidence an image of a check dated January 17, 2016 for $30,000 payable to Tapmasters' general contractor, ABD Construction Services, LLC ("**ABD**") drawn on a Tapmasters' checking account, and a second image of a check dated March 18, 2016 for $29,674 payable to "The BMC Group" drawn on an ABD checking account. [ECF Nos. 13, and 14].[1] I also took live testimony from Mr. Mingo. None of the evidence taken at the inquest concerned the date or dates upon which Tapmasters demanded that Blackrock refund the deposit.

After considering the evidence as to damages, I indicated that I would enter a judgment in the amount of $29,674, and I asked Tapmasters whether it also sought prejudgment interest. Tapmasters explained that because Blackrock was a Florida company, it sought prejudgment and post-judgment interest at the Florida statutory rate, which it represented to be 6.77%. I informed Tapmasters that post-judgment interest would be calculated at the federal statutory rate and that Tapmasters would have to provide calculations and authorities to support its claim for prejudgment interest at the Florida statutory rate. I also instructed Tapmasters' counsel to submit a proposed form of judgment.

Tapmasters submitted a proposed form of judgment to my chambers on September 17, 2020, along with additional papers in support of its request for prejudgment interest. Those additional papers asserted that Tapmasters was entitled to prejudgment interest calculated from

---

[1] "The BMC Group" appears to be another name for Blackrock or an affiliate of Blackrock.

March 18, 2016 (the date on which Tapmasters made payment to Blackrock) at a rate of 5.37%, and cited Florida statutes and caselaw explaining the applicable rate of prejudgment interest under Florida law and the date from which prejudgment interest ordinarily is calculated under Florida law. *See TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016). *TracFone's* analysis of prejudgment interest, however, bypasses certain threshold questions that are before this Court concerning the choice of law, *i.e.*, (1) whether state law or federal law applies to the prejudgment interest calculation in this case, and (2) if state law governs, which state's law should apply.

## Discussion

Tapmasters' first cause of action is a claim for "turnover" under section 542 of the Bankruptcy Code. There is no explicit authority in the Bankruptcy Code or in the applicable procedural rules for an award of prejudgment interest with respect to a turnover claim. However, a number of courts have held that federal courts have discretion to award prejudgment interest in a turnover action. *See, e.g.*, *In re FKF 3, LLC*, No. 13 Civ. 3601 (JCM), 2018 U.S. Dist. LEXIS 183087, *49 (S.D.N.Y. Oct. 24, 2018); *Geron v. Peebler (In re Pali Holdings, Inc.)*, 491 B.R. 389, 393 (Bankr. S.D.N.Y. 2013). They have done so pursuant to a well-recognized general principle that federal courts have discretion to award prejudgment interest even in the absence of an explicit provision for such interest in the relevant federal statute or the governing rules. *See Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833-34 (2d Cir. 1992 (citing authorities). Factors that a court may consider in deciding whether to grant prejudgment interest include (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award,

4

(iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. *Id.*

The relevant factors warrant an award of prejudgment interest in this case. Interest is necessary to compensate Tapmasters fully for the lost use of funds from and after the date on which the funds should have been returned. Considerations of fairness and equity favor such an award, and the purpose of the "turnover" statute support such an award. There are no countervailing factors that would counsel against the award of prejudgment interest.

However, Tapmasters is wrong in suggesting that interest should run from the date on which Tapmasters first paid the deposit. In the first place, Tapmasters had no "turnover" claim until Tapmasters filed its bankruptcy petition. In addition, although Tapmasters has alleged in its complaint that it made prior demands for the return of its property, there is no indication in the Complaint, or in any of the evidence offered by Tapmasters, as to the dates on which such demands were allegedly made. Tapmasters has not alleged that there was anything wrongful in the original delivery of the deposit to Blackrock, and it has not argued that the original contract was void. It has only argued that at some point intervening circumstances terminated Blackrock's right to continue to hold the deposit and gave Tapmasters the right to demand its return. In the absence of any other evidence, I cannot find that Tapmasters' rights to the return of the deposit accrued any earlier than the date on which the Complaint was filed.

The Court has discretion in selecting an appropriate interest rate at which prejudgment interest may be awarded on a turnover claim. One option is to use the applicable federal judgment rate. Another option is to use the relevant prejudgment interest rate under state law. A turnover claim is asserted as a matter of federal bankruptcy law, but the underlying property rights that are enforced through a turnover claim are governed by state law, and so there may be

5

some sense (at least in this case) to the use of a state's interest rate in calculating prejudgment interest. Before discussing that question further, it is useful first to discuss Tapmasters' alternative claim for relief based on "unjust enrichment" theories, because that claim also raises questions about prejudgment interest calculations under applicable state law.

Claims alleging unjust enrichment are state-law claims. "State law is applicable to questions of prejudgment interest on claims arising out of or based on State law, even where the action was brought in Federal court pursuant to the court's exclusive jurisdiction." *Davis v. M & M Developer, LC (In re MBM Entertainment, LLC)*, Adv. Pro. No. 14–02231 (MEW), 14–02386 (MEW) and 15–01086 (MEW), 2015 WL 3877285, at *1 (Bankr. S.D.N.Y. June 19, 2015) (quoting *Strobl v. N.Y. Mercantile Exch.*, 590 F. Supp. 875, 881 (S.D.N.Y. 1984)). The only two states whose laws might govern the unjust enrichment claim in this case are Florida (where Blackrock had its headquarters) and New Jersey (where Tapmasters was located and where the proposed contract was to be performed).

The Second Circuit has held that in deciding which state's law governs a claim a bankruptcy court should apply the choice of law rules of the forum state unless an important federal policy is implicated. *See Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605-07 (2d Cir. 2001). No important federal policy is implicated by this adversary proceeding, and so New York choice of law rules should be applied in deciding whether Florida or New Jersey law governs the unjust enrichment claim.

New York gives effect to contractual choice of law provisions. *Weisbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (2006). However, the documents provided to this Court did not indicate that the parties made a contractual choice as to the governing law. In such case, New York law calls upon a court first to determine whether there is any actual conflict

6

between the laws of the different states that arguably govern a claim. *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006).

Under Florida law, the elements of a cause of action for unjust enrichment are that: (1) the plaintiff conferred a benefit on the defendant, who had knowledge thereof; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff. *See Peoples Nat'l Bank of Commerce v. First Union Natl'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). Under New Jersey law, a claim for unjust enrichment similarly requires a showing that the defendant received a benefit and that retention of that benefit without payment would be unjust. *See Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007). New Jersey law also requires a showing that a plaintiff expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant, and that the failure of remuneration enriched the defendant beyond its contractual rights. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994). It appears that there is little difference between the substantive elements of an unjust enrichment claim under Florida and New Jersey law.

However, Florida and New Jersey apply different prejudgment interest rules. In Florida, the rate of prejudgment interest is determined at the time a judgment is obtained, and the applicable rate of prejudgment interest would be 5.37%. Fla. Stat. § 55.03; *see also* https://www.myfloridacfo.com/Division/AA/LocalGovernments/Current.htm; *Ecapital Corp. v. Global Logistics Solutions Group, LLC*, No. 20-cv-22871-BLOOM/Louis, 2020 WL 5517567, at *2 (S.D. Fla. Sept. 14, 2020) (stating the URL of the interest rate table). In New Jersey, "the award of prejudgment interest on contract and equitable claims is based on equitable principles." *Cnty. of Essex v. First Union Nat. Bank*, 891 A.2d 600, 608 (N.J. 2006). More particularly:

7

> The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

*Id. (quoting Rova Farms Resort, Inc. v. Investors Ins. Co.*, 323 A.2d 495, 512 (N.J. 1974). Prejudgment interest under New Jersey law is supposed to be compensatory rather than punitive and is designed to compensate the plaintiff for "the loss of what the moneys due him would presumably have earned if payment had not been delayed." *Tobin v. Jersey Shore Bank*, 460 A.2d 195, 198 (N.J. Super. Ct. App. Div. 1983) (*quoting Busik v. Levine*, 307 A.2d at 571, 575 (N.J. 1973)).

Courts that have awarded prejudgment interest on contract and unjust enrichment claims under New Jersey law often make reference to New Jersey rules governing the award of prejudgment interest in tort cases, though courts are not required to do so. *See, e.g.*, *PNY Techs, Inc. v. Salhi*, Civil Action No.: 12-cv-4916, 2018 WL 1087496, at *3 (D.N.J. Feb. 28, 2018) (applying N.J. Court Rule 4:42-11 to a claim for unjust enrichment). The rate at which prejudgment interest is to be calculated under N.J. Court Rule 4:42-11 depends on two inputs. The first question is whether the judgment amount exceeds the monetary limit for New Jersey's "Special Civil Part," which is a subdivision of New Jersey's Civil Court. Here, the judgment amount of $29,674 exceeds the Special Civil Part limit of $15,000 as set forth in N.J. Court Rule 6:1-2. Thus, the 2% premium provided in subparagraph (a)(iii) of the Rule applies. The second input is the average rate of return (to the nearest half or whole percent) for the prior fiscal year ending June 30, 2020 of the New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury. *Id.* According to the Division of Investment, the average rate of return on the New Cash Management Fund for Fiscal Year 2019 was 2.29%. *Cash Management Fund Rate of Return*, N.J. Treasury Div. of Inv.,

https://www.state.nj.us/treasury/doinvest/cash3.shtml (last visited Oct. 17, 2020). Thus, under Rule 4:42-11, the prejudgment interest rate would be 4.5%, after rounding the 2.29% figure up to 2.5% and adding the 2% premium for judgments exceeding the Special Civil Part limit. *See also* New Jersey Judiciary, *Post-Judgment and Pre-Judgment Interest Rates* (2010), *available at* https://www.njcourts.gov/courts/assets/civil/postprejudgementrates.pdf.

      The rate of prejudgment interest therefore would differ significantly under Florida and New Jersey law. There is no basis on which New York law would be applicable to the unjust enrichment claim, and so a choice between New Jersey and Florida law is required. Courts have differed as to the choice of law rule that should be applied to an unjust enrichment claim where a choice needs to be made. Some courts have held that an unjust enrichment claim is an equitable claim and that in such a case the New York choice of law rules require a court to apply an "interest analysis," under which the court will apply the laws of the state that has the greatest interest in regulating the particular transaction that gives rise to the unjust enrichment claim. *See Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 359 (Bankr. S.D.N.Y. 2010). Other courts have held that an unjust enrichment claim is a "quasi-contract" claim and that the choice of law analysis should be based on a "center of gravity" or "grouping of contacts" analysis, under which courts may consider (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties. *See Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177, 183 (S.D.N.Y. 2000), *aff'd*, 242 F.3d 366 (2d Cir. 2000). It does not matter which of these tests is applied in this case, because under either approach it is plain that New Jersey law (not Florida law) should more properly govern the parties' transaction and the unjust enrichment claim.

9

As alleged in the complaint, Tapmasters is a New Jersey limited liability company whose principal place of business is also in New Jersey. Any injury that allegedly was suffered therefore was suffered in New Jersey. In addition, the construction work for which Blackrock received the deposit was to be performed in New Jersey. There is no evidence that the contract negotiation or formation took place anywhere but New Jersey. Tapmasters has alleged that Blackrock has its headquarters in Florida, but the contract proposal that Tapmasters offered in evidence shows clearly that Blackrock also had an office in Rutherford, New Jersey. Based on the information that has been pleaded and the evidence at trial it is plain that New Jersey (not Florida) has the greater interest in regulating the particular transaction at issue, and that the parties' contacts centered on New Jersey and not Florida.

Determining the date upon which interest began to accrue is a more difficult question to address because it depends on the date upon which the unjust enrichment claim arose and when Tapmasters' "injury" occurred. *Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 644 (D.N.J. 2005). The "injury" here did *not* occur on the date when the deposit was paid. As was the case with the turnover claim, Tapmasters has not alleged that the initial delivery of the deposit to Blackrock was wrongful, or that the proposed contract was illegal or void in any respect. Tapmasters has only argued that at some point intervening circumstances terminated Blackrock's right to continue to hold the deposit and gave Tapmasters the right to demand its return. Any "injury" in this case occurred only when Tapmasters had the right to a return of the funds. In the absence of any other evidence as to when that happened, or as to when the return of the deposit was demanded, I cannot find that Tapmasters' rights to the return of the deposit under its unjust enrichment claim accrued any earlier than the date on which the Complaint was filed.

In the absence of such proof, the only evidence as to when Tapmasters' claim accrued, and as to when Blackrock refused to honor Tapmasters' demand for the refund, is the service of the complaint itself. As such, and in accordance with equitable principles, I will treat the date the complaint was filed as the date upon which the unjust enrichment claim accrued. I will award prejudgment interest from that date at the New Jersey rate of 4.5%.

I hold also that the turnover claim overlaps with the unjust enrichment claim and that the same rate of prejudgment interest would be appropriate regardless of which claim is cited as support for the judgment.

Based on a judgment amount of $29,674, prejudgment interest through and including October 28, 2020 would be $621.93, for a total judgment of $30,295.93. I will also award costs in the amount of $350.

Dated: October 28, 2020
      New York, New York

                              **s/Michael E. Wiles**
                              HON. MICHAEL E. WILES
                              UNITED STATES BANKRUPTCY JUDGE